160 N.J. Super. 333 (1978)
389 A.2d 1001
JOSEPH C. OTT, PLAINTIFF-RESPONDENT,
v.
BOARD OF EDUCATION OF THE TOWNSHIP OF HAMILTON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 13, 1978.
Decided July 6, 1978.
*335 Before Judges HALPERN, LARNER and KING.
Mr. Henry F. Gill argued the cause for appellant.
Mr. Arnold M. Mellk argued the cause for respondent (Messrs. Greenberg & Mellk, attorneys; Mr. David Arrajj on the brief).
*336 The opinion of the court was delivered by LARNER, J.A.D.
Plaintiff Joseph C. Ott is employed as a tenured teacher in a local high school by the Board of Education of Hamilton Township (board). On October 6, 1977 he was arrested and charged with unlawful possession of over 25 grams of marijuana and under 5 grams of hashish in violation of N.J.S.A. 24:21-20(a) (4). Based upon this arrest he was on October 7, 1977 temporarily suspended with pay by the superintendent of schools pursuant to N.J.S.A. 18A:25-6 pending proceedings under N.J.S.A. 18A:6-10.
Accordingly, on October 19 the board filed and served a written charge of unbecoming conduct based upon the facts underlying the criminal complaint and arrest, together with a notice advising plaintiff of his right to file a sworn statement in opposition to the charge within 15 days. This notice also stated that upon the expiration of 15 days the board would determine within 45 days whether to certify the charges to the Commissioner of Education for a plenary disciplinary hearing to be held in accordance with the provisions of N.J.S.A. 18A:6-10 et seq. See In re Fulcomer, 93 N.J. Super. 404 (App. Div. 1967).
This notice evoked a response from plaintiff's attorney in which he posited a constitutional dilemma in that plaintiff had to choose between filing a sworn statement which might be used to incriminate him in connection with the pending criminal charges, and jeopardizing his tenured position by failing to file such a statement. He therefore requested that the proceeding preliminary to the filing of charges with the Commissioner of Education be suspended until the disposition of the criminal case, and that plaintiff's salary be paid during that period.
The board advised counsel that it would not suspend the disciplinary charge proceeding during the pendency of the criminal prosecution.
Thereupon plaintiff filed a complaint in lieu of prerogative writs in which he sought a judgment restraining the board *337 from certifying the charges to the Commissioner pending disposition of the criminal proceeding because of the alleged constitutional dilemma. On the return date of an order to show cause the matter was argued and the trial judge entered a judgment enjoining the board from certifying the charges to the Commissioner of Education until the criminal charge is disposed of. The judgment further provided that the board pay to plaintiff the established salary and benefits, subject to credit for any moneys earned by him in other employment in the interim. The board appeals from the whole of the judgment.
Preliminarily, we reject the argument of the board that the complaint in lieu of prerogative writs was improvidently filed because of plaintiff's failure to exhaust administrative remedies by appeal to the Commissioner of Education. Since the prime issue is purely a matter of law relating to asserted constitutional deprivation, there is no question requiring administrative expertise or discretion, and the doctrine of exhaustion of administrative remedies is not imperative. See Brunetti v. Borough of New Milford, 68 N.J. 576, 588-591 (1975); Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291, 296-297 (1968).
The trial judge properly assumed jurisdiction. He then proceeded to equate the position of the accused teacher with that of the accused prisoner in Avant v. Clifford, 67 N.J. 496 (1975), and suggested that if plaintiff submitted a statement in conjunction with the disciplinary suspension proceeding he would be entitled to "use" immunity in a subsequent criminal prosecution. However, he recognized his lack of power to grant such immunity prior to the criminal trial. Nevertheless, in order to resolve the dilemma faced by plaintiff, he entered the order which is the subject of this appeal.
We reject plaintiff's contention that he is entitled to "use" immunity on federal constitutional grounds. His argument that the Fifth Amendment privilege against self-incrimination is violated by the compulsion to submit a *338 statement in defense of the disciplinary charge while under the threat of the criminal charge is misplaced.
In Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), and Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the Supreme Court held that the protection of the Fifth Amendment privilege against self-incrimination could not be frustrated or "watered down" by imposing the penalty of the loss of a livelihood or dishonor as an automatic consequence of the assertion of the privilege to remain silent. Thus it was concluded that the right to remain silent cannot be infringed through any penalty for asserting such right, whether that penalty consists of a fine or imprisonment or consists of the threat of job forfeiture. Such a choice, fraught with the element of compulsion, is so destructive of the free choice to speak out or remain silent that it will not be countenanced as a matter of due process under the Fourteenth Amendment in state proceedings. See Garrity, supra, 385 U.S. at 500, 87 S.Ct. at 620, 17 L.Ed.2d at 567. As a consequence, any statement made under such circumstances cannot be used in evidence against a defendant in a criminal proceeding.
The doctrine of these Supreme Court cases, however, does not apply herein, for there exists no compulsion on the part of plaintiff to make a statement nor an automatic penalty of dismissal from his position for failure to do so. The statute (N.J.S.A. 18A:6-11) mandates that the teacher shall be given "an opportunity to submit a written statement." He has the choice, and the board granted him that opportunity to submit one or not. If he fails to do so, he is not penalized in any respect, except that the board, and ultimately the Commissioner, may consider the merits of the charges on available evidence without his statement. Furthermore, the current disciplinary proceeding deals only with interim suspension *339 pending the disposition of the criminal charge and does not involve permanent loss of livelihood.
The distinction in consequence between the peremptory loss of position resulting from a choice to remain silent and the mere prejudice in the disciplinary proceeding resulting from such choice is highlighted by the case of Baxter v. Palmigiano, 425 U.S. 308, 316-320, 96 S.Ct. 1551, 1557-1559, 47 L.Ed.2d 810, 820-822 (1976). In that case the court pointed out that since the silence of the prison inmate "in and of itself" was insufficient to support an adverse decision by the Disciplinary Board, the issue is very different from the circumstances before the court in Garrity and Lefkowitz where refusal to waive the Fifth Amendment privilege, standing alone, resulted in loss of employment. Thus, it was not "an invalid attempt by the State to compel testimony without granting immunity or to penalize the exercise of the privilege." 425 U.S. at 318, 96 S.Ct. at 1558, 47 L.Ed.2d at 821. See also, Costanza v. Costanza, 66 N.J. 63 (1974); Mahne v. Mahne, 66 N.J. 53 (1974); State v. Falco, 60 N.J. 570 (1972).
For the foregoing reasons we do not find that the circumstances involved herein bring into play a federal constitutional issue.
The more troublesome problem is whether the dilemma asserted by plaintiff in deciding whether or not to file a statement is so oppressive that New Jersey law demands the protection of immunity from use of such statement in a subsequent trial of the criminal charge.[1] Plaintiff on this appeal relies upon Avant v. Clifford, supra, 67 N.J. 496, as authority for the immunity protection. In that opinion Chief Justice Hughes, in dealing with the dilemma of a prison inmate who is charged with a disciplinary infraction *340 and may wish to speak in his own defense, while faced with a potential criminal charge arising out of the same set of facts, noted:
To be free to speak in defense or extenuation, a way must be found to immunize whatever the prisoner says or whatever evidence may be derived from what he says from use against him in a subsequent criminal proceeding for the establishment of guilt of the offense involved. As we have seen, his statement in the disciplinary process, in substance if not in form, must be regarded as "compelled" in the sense that its absence would project the "grievous loss" entailed in disciplinary punishment. [at 540-541]
The Chief Justice also adopted the rationale of Sands v. Wainwright, 357 F. Supp. 1062, 1092-1093 (M.D. Fla.), vacated and remanded (for failure to convene a three-judge district court) 491 F.2d 417 (5 Cir. 1973), cert. den. 416 U.S. 992, 94 S.Ct. 2403, 40 L.Ed.2d 771 (1974).
This Court recognizes that the threat of an imposition of solitary confinement or the loss of any type of gain time may operate to coerce a waiver of the Fifth Amendment privilege against self-incrimination and that, on the other hand, an inmate who chooses to remain silent is stripped of his most valuable defense. In either event, the dilemma is "* * * likely to exert such pressure upon an individual as to disable him from making a free and rational choice." Miranda v. Arizona, 384 U.S. 436, 464-465, 86 S.Ct. 1602, 1623, 16 L.Ed.2d 694 (1966). Therefore, this Court concludes and holds that, with regard to testimony given at any type of prison disciplinary proceedings including those in which the grievous loss is, as heretofore defined, punitive segregation, administrative segregation or the loss of any type of gain time, the inmate therein proceeded against is in each such case entitled to "use" immunity in a subsequent criminal prosecution to the extent that his statements shall not be used affirmatively against him. * * * It is simply intolerable that one constitutional right should have to be surrendered in order to assert another.
The result of this rule accommodates the interests of the parties as well as justice. The inmate is free to be heard in his defense in the disciplinary proceedings while the state is free to promote prison discipline and to protect its interest in the prosecution of crime. [at 542]
See also, Fowler v. Vincent, 366 F. Supp. 1224 (S.D.N.Y. 1973).
*341 It is manifest, however, that even if we were to apply the analogy of an inmate in a prison setting to the circumstances herein, there would be no mechanism in the context of this litigation for the court to grant immunity. In fact, if plaintiff is entitled to immunity, such immunity arises only when necessary by way of exclusion of any statement in the trial of the criminal charge. Such immunity, if it exists, is self-executing and protects him from subsequent use of the statement in the criminal proceeding. See Avant v. Clifford, supra, 67 N.J. at 544; State v. De Cola, 33 N.J. 335, 352-353 (1960); Adams v. Maryland, 347 U.S. 179, 181, 74 S.Ct. 442, 444, 98 L.Ed. 608, 612 (1954).
In any event, we find it unnecessary to decide whether Avant is applicable in a case of this type where the proceeding giving rise to the dilemma is essentially civil in nature relating to the suspension of a public employee. We prefer rather to consider the matter as one arising within the ambit of the broad powers of a court of equity.
In that vein, we find that there is a sufficient showing of inequity and unfairness if the disciplinary proceeding is permitted to continue, because of the potential prejudice to plaintiff from the dilemma of foregoing his defense therein or risking self-incrimination. Thus the relief granted by the court by way of restraint is warranted within its equitable powers. Such relief is appropriate not because of the violation of any constitutional or fundamental rights but simply as an equitable solution to an intolerable situation.
Nevertheless, it does not follow that such a reasonable resolution of plaintiff's dilemma should result in an order that he be paid his salary during the period of suspension.
Under N.J.S.A. 18A:6-14, the board may suspend an employee with or without pay upon certification of a charge to the Commissioner. And such suspension, whether with or without pay, continues for a maximum of 120 days to permit a determination by the Commissioner. If the latter delays his decision beyond the period of 120 days, the employee *342 is to be paid his salary thereafter, until disposition of the charge.
Significantly, the provision for reinstatement of salary after 120 days excludes in the time computation "all delays which are granted at the request of such person."
In view of this expression of legislative intent and the application of basic equitable principles, we conclude that plaintiff's application for the restraint of the disciplinary process for his own purposes and protection bars him from entitlement to the continued receipt of his salary in the meantime. Since his action has produced the delay the board should not be compelled to continue to pay his salary while unemployed. A contrary conclusion would reward him with receipt of salary without service during the pendency of the criminal charge and the potential extensive delay in its disposition. In the absence of such criminal involvement, on the other hand, the board could suspend his salary for 120 days within which the Commissioner would be able to dispose of the charge. Plaintiff should not be in a better position because the infraction involves a crime than that which would obtain if the charge were non-criminal. Since the delay is brought about by him and his interest, the board should not be burdened with interim salary payments. Of course, in the ultimate, if plaintiff is cleared of the disciplinary charges, he will be entitled to reinstatement with full back salary.
We therefore affirm the judgment below so far as it restrains the board from certifying the charges to the Commissioner pending disposition of the criminal indictment. We reverse that portion of the judgment which commends the board to continue to pay salary and other benefits pending the disposition of the disciplinary proceedings. Since such salary has been paid pursuant to the Law Division judgment pending this appeal, plaintiff is to reimburse the board for such payment, subject to such adjustment as may be appropriate when the disciplinary charges are resolved.
NOTES
[1] It is well established that New Jersey may impose stricter standards for the protection of individual rights than those imposed by the Federal Constitution. State v. Deatore, 70 N.J. 100, 112-114 (1976); State v. Johnson, 68 N.J. 349, 353 (1975).