REISNER, P.J.A.D.
*453 Based on overwhelming evidence gathered during the execution of a search *289 warrant, a jury convicted defendant Luis Melendez of multiple drug and weapons offenses.[1] After merger, the trial court *454 sentenced defendant to an aggregate term of thirty years in prison, fifteen years of which were to be served without parole.
Defendant appeals from his conviction and sentence. Significantly, he challenges the admission in evidence of the answer he filed in a parallel civil forfeiture case. We reject defendant's argument that admission of this evidence violated his Fifth and Sixth Amendment rights, but we hold that, in the context of this case, the process by which the State induced defendant to file the answer was fundamentally unfair. Although the evidence should not have been admitted, we conclude that the error was harmless. We provide guidance for future forfeiture proceedings to avoid the unfairness that occurred in this case.
We affirm the convictions on all counts, except for the conviction for second-degree unlawful possession of a weapon. Due to plain error in the jury charge, we reverse and remand for retrial as to that count only. We affirm the sentence of thirty years, fifteen years to be served without parole.[2]
I
The following evidence was the subject of a pre-trial motion to reveal the identity of a confidential informant (CI). The Hoboken police conducted a month-long investigation, during which they used a CI to make several undercover purchases (controlled buys) of drugs from defendant. The CI made the purchases at an *455 apartment on the sixth floor of a building located at a specific address on Marshall Street in Hoboken (the Marshall Street apartment).[3] Based on the controlled buys, the police obtained a search warrant for the Marshall Street apartment.
Next, we summarize the evidence placed before the jury during the trial. The police arrived at the Marshall Street apartment to conduct a search pursuant to a warrant. When the apartment's occupants would not immediately open the door for the police, the officers broke down the door with a battering ram. During the search, which focused on the apartment's back bedroom, the police found 347 bags of heroin, packaged in bundles. Some of the heroin was found in dresser drawers, along with other types of CDS. The police also found a metal sifter, equipment used to seal plastic bags, stamping equipment of a kind used to label bags of heroin, drug testing kits, hypodermic needles, a radio scanner, and a book of radio frequencies used by various law enforcement agencies. In a bedroom closet, the police also found handcuffs, a *290 digital scale, a .44 magnum handgun and $2900 in cash.
The State presented the following evidence connecting defendant to the back bedroom. In the same dresser drawer that contained some of the heroin, the police found two prescription pill bottles with defendant's name on them. One of the bottles contained Oxycodone pills. The other contained allergy medicine. Each bottle listed a different address for defendant, one in Newark and the other in Brooklyn. The police seized the pill bottles, and they were introduced in evidence at the trial. On cross-examination, one of the officers testified that, during the search of the bedroom, he found some "personal papers" with defendant's name on them; however, he did not seize those documents.
In the bedroom closet that contained the cash and the handgun, the police also found and seized a set of handcuffs with the name "Zulma" engraved on them. At the trial, defendant's former live-in *456 girlfriend, a law enforcement officer named Zulma, identified the handcuffs as having been issued to her by her employer. She testified that she had several pairs of handcuffs and did not realize that pair was missing. The former girlfriend also testified that she had a twelve-year relationship with defendant and had two children with him. Their relationship ended in 2001, and she never lived in the Marshall Street apartment.
While the search of the apartment was proceeding, one of the officers walked into the hallway outside the apartment and saw defendant emerge from a sixth-floor stairwell. The officer placed defendant under arrest. At the police station, another officer asked defendant for some routine pedigree information in order to complete the arrest report. According to this officer, when he asked defendant for his home address, defendant gave the address of the Marshall Street apartment. The officer recorded that information on the arrest report.
The State also presented evidence from which a jury could reasonably infer that other members of defendant's family lived in the Marshall Street apartment. When the police entered the apartment, they found it occupied by a man and a woman, both in their fifties or sixties, and a young child-all named "Melendez." The man and woman attended the trial, and one of the testifying police officers identified them to the jury as the two adults named Melendez who were present in the apartment during the search.
The State also introduced evidence that defendant filed an answer to a civil forfeiture complaint, in which he admitted that the $2900 belonged to him and claimed it was the lawful proceeds of a check issued to him by the federal government.
II
On this appeal, defendant challenges the conviction and the sentence, raising the following points of argument:
POINT I: BECAUSE THE STATE OBTAINED DEFENDANT'S STATEMENT IN A QUASI-CRIMINAL CIVIL FORFEITURE ACTION POST-INDICTMENT, WITHOUT ADMINISTERING MIRANDA RIGHTS, AND THROUGH
*457 COERCION BY THREATENING TO PERMANENTLY DEPRIVE DEFENDANT OF HIS PROPERTY, THE TRIAL COURT ERRED IN RULING THAT THE STATEMENT WAS ADMISSIBLE IN THE STATE'S CASE-IN-CHIEF DURING DEFENDANT'S RELATED CRIMINAL TRIAL
POINT II: THE TRIAL COURT ERRED IN PERMITTING TESTIMONY AT TRIAL AS TO AN ALLEGED
*291 STATEMENT MADE BY DEFENDANT WITHOUT FIRST CONDUCTING A HEARING TO DETERMINE ADMISSIBILITY, AS REQUIRED BY N.J.R.E. 104(C). THE ERROR WAS COMPOUNDED WHEN THE TRIAL COURT FAILED TO DECLARE A MISTRIAL AND REFUSED TO ALLOW DEFENDANT A BRIEF ADJOURNMENT TO CALL A WITNESS TO REFUTE THE TESTIMONY
POINT III: BY INCORPORATING EVIDENCE PRESENTED AT TRIAL INTO THE QUESTIONS POSED TO THE NARCOTICS EXPERT, THE STATE IMPERMISSIBLY INTRODUCED EXPERT OPINION TESTIMONY THAT INVADED THE PROVINCE OF THE JURY (PARTIALLY RAISED BELOW)
POINT IV: THE TRIAL COURT'S INSTRUCTIONS ON UNLAWFUL POSSESSION OF A HANDGUN ELIMINATED AN ESSENTIAL ELEMENT OF THE CRIME AND THUS DENIED DEFENDANT THE RIGHT TO TRIAL BY JURY AND DUE PROCESS OF LAW (PARTIALLY RAISED BELOW)
POINT V: THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO COMPEL THE STATE TO REVEAL THE IDENTITY OF THE CONFIDENTIAL INFORMANT AS THAT INFORMANT'S IDENTITY WAS ESSENTIAL IN DEFENDANT'S CHALLENGE TO THE SEARCH WARRANT
POINT VI: THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE. ADDITIONALLY, THE SENTENCING COURT DID NOT PROVIDE ANY REASONING TO SUPPORT THE SENTENCE IMPOSED
After reviewing the record, we conclude that several of defendant's arguments require only brief discussion.
We reject defendant's Point II, because the police were entitled to ask defendant for routine pedigree information, including his name and address, for purposes of completing the arrest report. See State v. M.L., 253 N.J. Super. 13, 21, 600 A.2d 1211 (App. Div. 1991) ; State v. Cunningham, 153 N.J. Super. 350, 352, 379 A.2d 860 (App. Div. 1977). The police were not required to administer Miranda [4] warnings before asking for that information. M.L., 253 N.J. Super. at 21, 600 A.2d 1211. As a result, defendant's *458 statement, that the Marshall Street apartment was his home address, was admissible.
The arrest report was provided in discovery, and the introduction of the information should not have come as a surprise to the defense. We find no abuse of the trial judge's discretion in denying defense counsel's mid-trial request for a N.J.R.E. 104(c) hearing concerning the contents of the arrest report. See State v. Scott, 229 N.J. 469, 479, 163 A.3d 325 (2017). Because no rule of law required that the trial judge make a preliminary finding of admissibility as to this statement, a N.J.R.E. 104(c) hearing was not required. See N.J.R.E. 104(c) (requiring an in limine hearing "[w]here by virtue of any rule of law a judge is required in a criminal action to make a preliminary determination as to the admissibility" of a defendant's statement).
As to Point V, the motion judge did not abuse her discretion in denying defendant's application to reveal the identity of the confidential informant. See State v. Milligan, 71 N.J. 373, 384-85, 365 A.2d 914 (1976). The CI was not a witness in the *292 case, and the charges against defendant were not based on his prior sales of drugs to the CI. See N.J.R.E. 516 ; State v. Brown, 170 N.J. 138, 148-50, 784 A.2d 1244 (2001) ; State v. Florez, 134 N.J. 570, 578-80, 636 A.2d 1040 (1994). We affirm on this point for the reasons stated by the judge in her thorough February 2, 2012 written opinion. Defendant's arguments are without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).
Addressing defendant's Point III, we agree that the police narcotics expert should not have been permitted to opine-based on a long hypothetical question that incorporated most of the evidence in this case-that narcotics were packaged and sold from the apartment. See State v. Cain, 224 N.J. 410, 427-28, 133 A.3d 619 (2016) ; State v. Simms, 224 N.J. 393, 396-97, 133 A.3d 609 (2016). However, in the context of this case, the error was harmless. The remainder of the expert's testimony consisted of unobjectionable explanations about the drug trade and how the various pieces of evidence found in the back bedroom would be *459 used in manufacturing and distributing heroin. Given the quantity of heroin in the room and the overwhelming admissible evidence, this error would not have caused the jury to convict defendant when it otherwise might have acquitted him. See R. 2:10-2; State v. Macon, 57 N.J. 325, 337-38, 273 A.2d 1 (1971).
III
Addressing defendant's Point IV, we agree that the trial court's charge on second-degree unlawful possession of a weapon was fatally flawed. The error was simple. The trial judge[5] forgot to include in the charge an essential element of the offense-that the State had to prove that defendant did not have a permit for the handgun. See N.J.S.A. 2C:39-5(b) ; Model Jury Charge (Criminal), "Unlawful Possession of a Handgun" (2001). Instead, through oversight, the judge only charged the jury that the State had to prove that defendant knowingly possessed the handgun. At some point, the judge realized the error and remarked to counsel that the charge was wrong, but he did not call the jury back and give them the correct charge. Instead, he allowed them to proceed to a verdict. As a result, defendant's conviction on that charge must be reversed and the matter remanded to the trial court.
Because the trial court merged the firearm possession conviction with the conviction for drug distribution while in possession of a firearm, it is possible that the State will decide not to retry defendant on the firearm possession charge. Within thirty days of the date of this opinion, the State shall inform the trial court in writing whether it intends to proceed with a retrial on this charge. If the State does not intend to pursue the charge, the trial court shall promptly issue an amended judgment of conviction consistent with this opinion.
*460 IV
Next, we address defendant's arguments concerning the State's introduction, at his criminal trial, of the answer he previously filed in the civil forfeiture action. We review a trial court's evidentiary rulings for abuse of discretion, but we review its legal interpretations de novo. See State v. Nantambu, 221 N.J. 390, 402, 113 A.3d 1186 (2015).
These are the most pertinent facts, some of which are derived from the trial judge's April 23, 2013 opinion. According to the opinion, on November 9, 2010, the day *293 after defendant's arrest, he appeared in the Central Judicial Processing court "for the arraignment on these charges and setting of bail." Because defendant was determined to be indigent, his case was referred to the Office of the Public Defender (OPD) for assignment of counsel and "a public defender represented the defendant regarding the setting of bail." About a month later, on December 20, 2010, the same prosecutor's office that was conducting the criminal prosecution filed a civil forfeiture action against defendant and multiple other individuals.[6] With respect to defendant, the complaint sought forfeiture of the $2900 found in the Marshall Street apartment.[7]
On February 3, 2011, the forfeiture complaint was served on defendant in the Hudson County jail, where he was being held on the charges for which he had been arrested in this case. As the trial judge found, "[t]he State did not serve the defendant's counsel (his public defender representing him for the criminal matter) a copy of the civil forfeiture complaint." Nor did the complaint or summons advise defendant that any statement he made in connection with the forfeiture action could be used against him in a criminal prosecution, or that if a criminal prosecution was *461 ongoing, he should make his criminal defense attorney aware of the forfeiture complaint before responding to it.
Nor did the complaint or summons place defendant on notice of his right to request a stay of the forfeiture complaint pending the outcome of his criminal trial. See N.J.S.A. 2C:64-3(f). Instead, the summons contained the standard language advising defendant that he had to file an answer within thirty-five days or face default. The summons advised him that he could contact Legal Services for representation, although that agency does not handle forfeiture cases.
Defendant was indicted in the criminal case on February 15, 2011, twelve days after the prosecutor's office served him with the forfeiture complaint. On March 22, 2011, defendant sent a handwritten letter to the judge handling the forfeiture case asking for an extension of time to file an answer. Defendant's letter also asked that counsel be appointed to represent him in the forfeiture action, because he was incarcerated in the county jail and his access to legal advice was "severely limited." Defendant was arraigned on the indictment on March 23, 2011. He was represented by an OPD attorney at that event, but there is no indication in the hearing transcript that his defense counsel knew about the pending forfeiture case.
According to the motion judge's opinion, on April 25, 2011, defendant filed a pro se answer in the forfeiture case, asserting that the $2900 belonged to him and that it was the proceeds of a check issued to him by the federal government.[8]
On August 22, 2012, an assistant prosecutor wrote to the Civil Division Manager, asking that the scheduled forfeiture trial be *462 adjourned until the conclusion of defendant's *294 related criminal case.[9] The letter stated:
The above referenced matter is a civil forfeiture action [in] which Luis A. Melendez is currently scheduled for trial on September 5, 2012. The forfeiture complaint arises out of Luis A. Melendez's arrest on November 8, 2010, where he is a defendant in a criminal case. I am requesting that the matter be adjourned and held in abeyance until the criminal action is complete.
Luis A. Melendez is currently incarcerated and filed an answer Pro Se. Mr. Melendez is scheduled for a status conference regarding the criminal matter on September 6, 2012.
The letter was "cc'd" to defendant but not to his OPD attorney.
In the criminal trial, the State was permitted to introduce defendant's answer in the forfeiture case as an admission that he owned the $2900, thus linking defendant to the back bedroom and its contents. The trial court rejected defendant's arguments that introducing the answer would violate his Fifth and Sixth Amendment rights.
On this appeal, defendant, joined by amicus curiae American Civil Liberties Union of New Jersey (ACLU), contends that the State's actions in this case violated his Fifth Amendment right against self-incrimination by eliciting an incriminating statement without providing Miranda warnings; circumvented his Sixth Amendment right to counsel, by eliciting incriminating statements from him while he was represented by counsel; and unfairly required him to sacrifice his Fifth Amendment right against self-incrimination in order to assert his Fifth and Fourteenth Amendment rights against seizure of his property without due process. The ACLU also contends that even if federal constitutional principles do not control here, we should also consider New Jersey jurisprudence that offers greater protection.
For the reasons discussed below, we conclude that the facts of this case do not squarely fit within the rubric of the Fifth or Sixth Amendments or analogous New Jersey constitutional principles.
*463 We also conclude that it is not necessary to decide the case on constitutional principles, because what occurred in this case so clearly violated the doctrine of fundamental fairness.
A. The forfeiture statute
To put our conclusion in perspective, we begin by discussing the civil forfeiture statute. The statute, N.J.S.A. 2C:64-1 to -9, allows the State to file an in rem action against two primary categories of seized property: (a) prima facie contraband, such as illegal drugs; and (b) derivative contraband, which is either the proceeds of illegal activity, or property that has been used or is intended to be used to further an unlawful activity. See N.J.S.A. 2C:64-1(a). In this case, the State contended that the $2900 found in the closet was derivative contraband, being the proceeds of illegal drug sales.
After seizing alleged derivative contraband, the State must file a civil in rem action within ninety days of the seizure if it wishes to seek forfeiture of the property. N.J.S.A. 2C:64-3(a). The State must give notice of the action "to any person known to have a property interest in the article." N.J.S.A. 2C:64-3(c). Anyone seeking to oppose the forfeiture (the claimant) must file an answer, which must state the claimant's "interest in the property." N.J.S.A. 2C:64-3(d). "If an answer is filed," the case is to *295 be heard "as soon as practicable." N.J.S.A. 2C:64-3(f). However, if there is a parallel "criminal proceeding arising out of the seizure," either the State or a claimant who is a defendant in that criminal action may file a motion to stay the forfeiture action until the criminal case is concluded. N.J.S.A. 2C:64-3(f).[10] If the State obtains a *464 conviction in the parallel criminal action, the conviction "creat[es] a rebuttable presumption that the property was utilized in furtherance of an unlawful activity" and is thus subject to forfeiture. N.J.S.A. 2C:64-3(j).
"Forfeiture statutes are generally disfavored in the law." State v. Seven Thousand Dollars, 136 N.J. 223, 238, 642 A.2d 967 (1994). Our Supreme Court has "required that courts strictly construe forfeiture statutes against the State and 'in a manner as favorable to the person whose property is to be seized as is consistent with the fair principles of interpretation.'" Ibid. (quoting State v. 1979 Pontiac Trans Am, 98 N.J. 474, 481, 487 A.2d 722 (1985) ).
"[T]he legal fiction of in rem proceedings against the property cannot obscure the fact that forfeiture really sanctions the owner of the property." Id. at 239, 642 A.2d 967. Forfeiture defendants are entitled to "certain [constitutional] protections normally associated with criminal trials." Ibid. Accordingly, in a forfeiture action, a defendant may assert his or her Fifth Amendment right against self-incrimination, and the State may not rely on a conviction obtained in violation of a defendant's Fifth Amendment rights. United States v. United States Coin & Currency, 401 U.S. 715, 721-22, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). Further, the State may not rely on evidence subject to exclusion under the Fourth Amendment. See One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 696, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965).
B. The Fifth and Sixth Amendments
Next, we turn to defendant's constitutional arguments. Defendant first contends that the prosecutor violated his Miranda rights by serving him with the forfeiture complaint, without *465 warning him that any statement made in the forfeiture matter could be used against him in the criminal action and without advising him of his right to invoke his Fifth Amendment right to remain silent. We conclude that Miranda does not apply here. " Miranda turns on the potentially inquisitorial nature of police questioning and the inherent psychological pressure on a suspect in custody." State v. P.Z., 152 N.J. 86, 102, 703 A.2d 901 (1997) ; see also Minnesota v. Murphy, 465 U.S. 420, 433, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). Although defendant was in custody, he was not subjected to the kind of inherently coercive police interrogation, requiring defendant's immediate response to questions, that Miranda was intended to address. Defendant was served with a civil complaint and was told that he had thirty-five days to respond. *296 Quoting Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), defendant argues that, under Miranda principles, police interrogation may include "any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." Defendant also contends that the State improperly engaged him about his case without first securing a waiver of the right to counsel, and deliberately elicited incriminating information while circumventing participation by his criminal defense attorney.
We are not persuaded by defendant's constitutional arguments. There is no evidence in this case that the prosecutor served defendant with the forfeiture complaint as a means of circumventing his right against self-incrimination. The forfeiture statute requires the State to file a forfeiture complaint within ninety days after seizing the money. See N.J.S.A. 2C:64-3(a). That will often result in a forfeiture complaint being filed and served while the parallel criminal case is pending, and does not in itself raise an inference that the State is trying to improperly elicit damaging admissions from the defendant. As discussed later in this opinion, we agree that the State should have sent defendant's criminal *466 defense attorney a courtesy copy of the complaint, but there is no evidence that the failure to do so was intentional and we do not find a Miranda violation.
Relying on Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), defendant and the ACLU contend that defendant did not voluntarily waive his Fifth Amendment right against self-incrimination when he filed his answer, because he was coerced into filing it in order to avoid losing his property. Relying on Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), they also contend that the State should not be permitted to force defendant to waive his Fifth Amendment right against self-incrimination in order to preserve his Fifth and Fourteenth Amendment rights against governmental seizure of his property.
Garrity involved an investigation by the New Jersey Attorney General (AG) into alleged traffic ticket fixing by certain police officers. 385 U.S. at 494, 87 S.Ct. 616. The AG warned the officers before questioning them during the investigation that (1) anything they said could be used against them in a criminal proceeding; (2) they could invoke the privilege against self-incrimination and refuse to answer questions; but (3) if they invoked the privilege, their employment would be terminated. Ibid.
The officers did not invoke the privilege and answered the AG's questions. Id. at 495, 87 S.Ct. 616. Their statements were later used against them in criminal proceedings, during which they were convicted of conspiracy to obstruct the administration of traffic laws. Ibid. Though the officers argued that their statements were coerced and should be suppressed, the Supreme Court of New Jersey disagreed and found that their statements were voluntary. Ibid.
The United States Supreme Court held that the officers' statements were inadmissible because they had been coerced. Id. at 496-500, 87 S.Ct. 616. The Court reasoned that, in being asked to choose "between self-incrimination or job forfeiture," the officers were "deprived of [their] 'free choice to admit, to deny, or to *467 refuse to answer.'" Id. at 496, 87 S.Ct. 616 (quoting Lisenba v. California, 314 U.S. 219, 241, 62 S.Ct. 280, 86 L.Ed. 166 (1941) ). Comparing the scenario to the coercive police interrogations at issue in Miranda, 384 U.S. at 464-65, 86 S.Ct. 1602, the Court concluded that the "[t]he option to lose their *297 means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent," and that the officers' statements were "infected by the coercion inherent in this scheme of questioning." Garrity, 385 U.S. at 497-98, 87 S.Ct. 616.
The Court more recently characterized Garrity, and similar cases, as excusing a witness from asserting the Fifth Amendment privilege in limited circumstances: "The principle that unites all of those cases is that a witness need not expressly invoke the privilege where some form of official compulsion denies him 'a free choice to admit, to deny, or to refuse to answer.'" Salinas v. Texas, 570 U.S. 178, 185, 133 S.Ct. 2174, 186 L.Ed.2d 376 (2013).
The ordinary rule in a civil case is that a defendant has the right to invoke the Fifth Amendment right to silence, but the burden of invocation is on the defendant. If he or she does not claim the privilege, it is waived and any incriminating statements will be admissible in a subsequent criminal prosecution. See United States v. Kordel, 397 U.S. 1, 7, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970) ; State v. Kobrin Securities, Inc., 111 N.J. 307, 312-13, 544 A.2d 833 (1988) ; P.Z., 152 N.J. at 101, 703 A.2d 901. Garrity is an exception from that rule.
The Garrity rule generally stands for the proposition that a statement taken from a public employee, threatened with termination from employment if he refuses to cooperate, is inadmissible in a criminal prosecution on the ground that such official coercion "interferes with the exercise of the Fifth Amendment privilege against self-incrimination."
[ State v. Burkert, 231 N.J. 257, 267 n.5, 174 A.3d 987 (2017).]
Viewed more broadly, Garrity requires that an individual be faced with an immediate and certain loss of an important right if he or she invokes the Fifth Amendment privilege. As our Supreme Court explained in P.Z.:
*468 Custodial interrogations by law enforcement officers are not the only special circumstances in which the Fifth Amendment privilege against self-incrimination is self-executing. Both the United States Supreme Court and our New Jersey courts have consistently held that the state may not force an individual to choose between his or her Fifth Amendment privilege and another important interest because such choices are deemed to be inherently coercive. These cases are based on the principle that the Fifth Amendment is violated "when a State compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered."
[ P.Z., 152 N.J. at 106, 703 A.2d 901 (quoting Lefkowitz v. Cunningham, 431 U.S. 801, 805, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977) ) (additional citations omitted).]
In P.Z., the Court held that a parent who participated in an interview about alleged child abuse, conducted by a case worker from the Division of Youth and Family Services,[11] could not prevent the State from later introducing his statements to the worker in his criminal trial. Id. at 92-95, 120-21, 703 A.2d 901. The Court concluded that Garrity did not apply, because defendant was not threatened with the certain loss of child custody if he did not answer the worker's questions and instead invoked his Fifth Amendment rights. Id. at 106-09, 703 A.2d 901. "[T]ermination of custody is not automatic on *298 invocation of the privilege." Id. at 108, 703 A.2d 901.
Likewise, in Ott v. Board of Education, 160 N.J. Super. 333, 338-39, 389 A.2d 1001 (App. Div. 1978), we held that Garrity was not applicable, because Ott, a teacher charged with misconduct, could invoke his right to silence in an administrative disciplinary hearing without necessarily losing the case. Additionally, the trial court had spared Ott the need to invoke his Fifth Amendment rights in the disciplinary action, by staying the administrative hearing until his pending criminal case was concluded. Id. at 337, 389 A.2d 1001. We found that "[s]uch relief is appropriate not because of the violation of any constitutional or fundamental rights but simply as an equitable solution to an intolerable situation." Id. at 341, 389 A.2d 1001.
*469 In this case, we conclude that Garrity is not applicable, because the forfeiture statute gave defendant the option of moving for a stay. Had he filed such a motion, he would have been relieved of any possible choice between waiving his Fifth Amendment privilege and losing his property to forfeiture.
For the same reason, defendant's reliance on Simmons is misplaced. In Simmons, which involved multiple defendants, the Court held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection" and waives his Fifth Amendment privilege against self-incrimination. Simmons, 390 U.S. at 394, 88 S.Ct. 967. That holding resulted in the reversal of defendant Garrett's armed robbery conviction, since testimony he gave at a pre-trial suppression hearing, in an attempt to exclude a suitcase from evidence, was later admitted against him at trial. Id. at 381-82, 88 S.Ct. 967. During the hearing, Garrett "admitted ownership of a suitcase which only a few hours after the robbery was found to contain money wrappers taken from the victimized bank ...." Id. at 391, 88 S.Ct. 967. The Court noted that, without Garrett's suppression hearing testimony, "the Government might have found it hard to prove that he was the owner ...." Ibid.
In so holding, the Court expressed concern that admitting the hearing testimony against defendants at trial would deter them from pursuing suppression motions. Id. at 392-93, 88 S.Ct. 967. The Court acknowledged the "undeniable tension" inherent in choosing between testifying in support of a motion to suppress and waiving one's Fifth Amendment privilege, or "giv[ing] up ... a valid Fourth Amendment claim." Id. at 394, 88 S.Ct. 967. The Court concluded that "[i]n these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another." Ibid. However, the opinion cautioned that "testimony is not always involuntary as a matter of law simply because it is given to obtain a benefit." Ibid. The Court noted in dicta that "testimony given for his own benefit by a *470 plaintiff in a civil suit is admissible against him in a subsequent criminal prosecution." Id. at 394 n.23, 88 S.Ct. 967.
Three years later, in McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), the Court questioned the reasoning in Simmons and essentially limited its application to the Fourth Amendment context in which it arose. Id. at 211-13, 91 S.Ct. 1454. Further, unlike this case, Simmons dealt squarely with constitutional tensions between Fourth Amendment and Fifth Amendment rights that arose within a single criminal proceeding. Simmons, 390 U.S. at 382, 88 S.Ct. 967. By contrast, this case involves parallel civil and criminal proceedings. As *299 noted, the Simmons Court acknowledged in dicta that its rationale was not necessarily applicable to testimony in civil proceedings. Id. at 393-94, 394 n.23, 88 S.Ct. 967. Thus Simmons may not apply beyond the criminal context in which it arose.
Furthermore, in Simmons, the petitioner did not have a procedural mechanism by which to avoid the impending conflict between his Fourth Amendment and Fifth Amendment rights. Here, as discussed above, the forfeiture statute provides such a procedure. N.J.S.A. 2C:64-3(f). Staying the civil proceedings until the criminal proceedings concluded would have mitigated the tension between defendant's Fifth Amendment right against self-incrimination and his Fifth Amendment property rights.
Citing Maine v. Moulton, 474 U.S. 159, 170-71, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), and State v. Sanchez, 129 N.J. 261, 272, 277, 609 A.2d 400 (1992), defendant also contends that the prosecutor's "strategy" in pursuing the civil forfeiture action and prosecuting him in a parallel criminal proceeding "gave, at the very least, the uncomfortable appearance of attempting to circumvent defendant's [Sixth Amendment] right to counsel." Once the right to counsel attaches, "the prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by [it]." Moulton, 474 U.S. at 171, 106 S.Ct. 477. To that end, "the Sixth Amendment is violated when the State obtains incriminating statements by knowingly *471 circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent." Id. at 176, 106 S.Ct. 477. See also Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) ; Massiah v. United States, 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).
In Moulton, a co-defendant confessed to the crime, but defendant was unaware of that fact. 474 U.S. at 162-67, 106 S.Ct. 477. The police then arranged for the co-defendant to secretly wear a body wire during a meeting with the defendant to discuss trial strategy. Id. at 164-66, 106 S.Ct. 477. The Court concluded that the police violated Moulton's Sixth Amendment rights when they "intentionally created a situation that they knew, or should have known, was likely to result in [the defendant] making incriminating statements." Id. at 168, 106 S.Ct. 477. However, the Court stated that the accused's right to counsel is not violated "whenever-by luck or happenstance-the State obtains incriminating statements from the accused after the right to counsel has attached." Id. at 176, 106 S.Ct. 477.
Highlighting the concern expressed in Moulton, the New Jersey Supreme Court made clear in Sanchez, that "prosecutors or their representatives should not initiate a conversation with defendants without the consent of defense counsel." 129 N.J. at 277, 609 A.2d 400. In that matter, the police interrogated a defendant in prison after he was indicted, thereby violating his Sixth Amendment right to counsel. Id. at 279, 609 A.2d 400.
In the circumstances of this case, we cannot conclude that the State intentionally circumvented defendant's Sixth Amendment right to counsel. As previously noted, the State was required to promptly file the forfeiture complaint, and there is no evidence that what occurred here was an intentional attempt to circumvent defendant's right to counsel. However, as discussed below, we conclude that the entire chain of events in connection with the forfeiture case violated principles of fundamental fairness and required that the State be precluded from introducing defendant's forfeiture pleading as evidence against him in the criminal case.
*300 *472 C. Fundamental fairness
Our courts have recognized the fundamental fairness doctrine in cases where State action does not violate the constitution but is nonetheless so unfair as to require the courts' intervention in the interests of justice. See Doe v. Poritz, 142 N.J. 1, 108, 662 A.2d 367 (1995).
New Jersey's doctrine of fundamental fairness "serves to protect citizens generally against unjust and arbitrary governmental action, and specifically against governmental procedures that tend to operate arbitrarily." In those rare cases where government action does not comport with "commonly accepted standards of decency of conduct to which government must adhere," and where existing constitutional protections do not provide adequate safeguards, this Court has not hesitated to declare that government must be restrained[.]
The doctrine of fundamental fairness has supported procedures to protect the rights of defendants at various stages of the criminal justice process, even when such protections are not constitutionally required. This Court has also applied standards of decency and fairness to governmental action that is constitutional but that, nonetheless, includes elements of oppression or harassment requiring court intervention. The "common denominator" in our cases is a threshold determination that someone has been or may be "subjected to potentially unfair treatment and there was no explicit statutory or constitutional protection to be invoked" against that treatment.
[ P.Z., 152 N.J. at 117-18, 703 A.2d 901 (citations omitted).]
The concern for fundamental fairness is particularly acute where, as here, the government pursues parallel civil and criminal actions:
In cases where there is an interrelationship between criminal and civil actions against the same person, courts must be "sensitive to the potential for the State's deliberately manipulating a civil procedure in order to obtain evidence against a criminal defendant." In Kobrin Securities, this Court expressed concern that the civil discovery process not be used to compel a defendant to provide information in support of the State's case in a parallel criminal proceeding. We concluded that the use of information so obtained would constitute "such unfairness and want of consideration for justice as to require reversal."
[ Id. at 118, 703 A.2d 901 (quoting Kobrin Securities, 111 N.J. at 317, 544 A.2d 833 ).]
While rejecting the defendant's Fifth Amendment claim in Kordel, the Supreme Court of the United States also recognized the potential fundamental fairness concerns that could arise under different circumstances:
*473 We do not deal here with a case where the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution; nor with a case where the defendant is without counsel or reasonably fears prejudice from adverse pretrial publicity or other unfair injury; nor with any other special circumstances that might suggest the unconstitutionality or even the impropriety of this criminal prosecution.
[ Kordel, 397 U.S. at 11-12, 90 S.Ct. 763 (emphasis added).]
The Court might have viewed the petitioners' argument differently if they had not been notified "that the agency contemplated a criminal proceeding against them with respect to the transactions that were the *301 subject of the civil action," or if they had not had legal representation when they answered the interrogatories that were later used against them in the criminal case. Id. at 4, 9-10, 90 S.Ct. 763.
In a forfeiture action, the State seeks to retain ownership of property it has already seized, thus immediately depriving defendant of its use and placing on defendant the onus of defending his or her property rights. Because of the way the forfeiture statute is structured, a defendant's answer must necessarily assert ownership of, or some interest in, the seized property. See N.J.S.A. 2C:64-3(d). Otherwise, the defendant has no standing to object to the forfeiture. Thus, defendant argues, by filing the forfeiture action, the State forces a defendant to admit ownership of the property and, thus, to incriminate himself if ownership is an issue in the parallel criminal action. As we previously discussed, this scenario could raise a Garrity Fifth Amendment issue, but for the fact that the forfeiture statute allows a defendant the option of moving to stay the action, in lieu of filing an answer. See Garrity, 385 U.S. at 493, 87 S.Ct. 616 ; Ott, 160 N.J. Super. at 338-39, 389 A.2d 1001.[12]
The problem in this case is not that defendant was legally without the stay option, but that the procedure the State followed *474 would have led any reasonable defendant to believe he had no such option. The summons told defendant in no uncertain terms that he had to file an answer in thirty-five days or he would be defaulted-i.e., as a lay person would understand it, he would automatically lose his property. Compounding the unfairness, defendant was incarcerated at the time, thus hampering his access to legal advice.
Further, the State did not serve defendant's OPD attorney with a courtesy copy of the forfeiture complaint, so the attorney could at least advise defendant to file a stay motion, advise him against making admissions, and suggest that he consult private counsel if possible.[13] In the context of this case, the failure to serve defendant's criminal defense attorney was at least inconsistent with the spirit of RPC 4.2, if it did not violate the Rule. See State v. Bisaccia, 319 N.J. Super. 1, 22, 724 A.2d 836 (App. Div. 1999) ; see also Sanchez, 129 N.J. at 277-78, 609 A.2d 400. It was certainly inconsistent with the professional courtesy we expect of attorneys practicing in this State.
Moreover, unlike P.Z. or Kobrin, where separate agencies handled the criminal and civil actions, the same prosecutor's office was both prosecuting defendant in the criminal action and moving to seize his property through forfeiture. This scenario presents a risk that a prosecutor's office will deliberately use forfeiture complaints as a means of extracting admissions from criminally-charged defendants, or could file a forfeiture action in advance of filing criminal charges in the hope of obtaining *302 information from a defendant for use in a future criminal prosecution.
*475 [W]e must be sensitive to the potential for the State's deliberately manipulating a civil procedure in order to obtain evidence against a criminal defendant. Should the government "use ... the civil discovery process to compel answers to interrogatories ... to build the government's case in a parallel criminal proceeding[, it would reflect] such unfairness and want of consideration for justice' as to require reversal."
[ Kobrin, 111 N.J. at 317, 544 A.2d 833 (alteration in original; citations omitted).]
There is no evidence that such deliberate manipulation occurred here. However, even if not done intentionally, or in violation of defendant's constitutional rights, what occurred here violated principles of fundamental fairness. We choose to premise our decision on that doctrine. Because defendant's answer was filed as the result of a fundamentally unfair process-one might describe it as a perfect storm of unfairness-the trial court misapplied discretion in admitting, in the criminal case, defendant's answer filed in the forfeiture case.
Nonetheless, in light of the other evidence that defendant lived at the Marshall Street apartment and was using the back bedroom, we find beyond a reasonable doubt that the error did not have a clear capacity to produce an unjust result. R. 2:10-2; see Macon, 57 N.J. at 329, 273 A.2d 1. Given his admission to the police that he lived in that apartment, the fact that he was arrested emerging from a stairwell on the same floor of the building as the apartment, and evidence that his family lived there, any rational jury would conclude that defendant lived in the apartment. Further, there was other evidence connecting defendant to the back bedroom. That evidence included the two pill bottles with his name on them in the dresser, his ex-girlfriend's unique, monogrammed handcuffs in the closet, and testimony that defendant's personal papers were found in the bedroom. We conclude that defendant's admission that he owned the money in the closet did not cause the jury to convict defendant when they otherwise might have acquitted him.[14] See R. 2:10-2.
*476 D. Future guidance
Although no prejudicial error occurred in this case, we conclude that some procedural modifications are needed in the initiation of forfeiture actions, to prevent this fundamentally unfair situation from recurring.
If a related criminal case is pending, the State must serve defendant's criminal defense lawyer with a courtesy copy of the forfeiture complaint at the same time that the State serves the defendant. Whether or not a criminal case is pending, the State must serve, along with the summons and forfeiture complaint, a notice that more accurately apprises the defendant of his or her rights in the forfeiture case than the standard summons currently does. The notice must advise the defendant that the State has filed a criminal case against the defendant, which relates to the facts asserted in the forfeiture complaint; or, if the State has not yet filed charges, the notice shall advise the defendant that the State may file such criminal charges in the future. The notice must state that any statements the defendant makes in the forfeiture case, including in *303 the answer to the complaint or in a motion to recover the forfeited property, may be introduced in evidence against him or her in a criminal case.[15]
The notice must state that the defendant does not have to file an answer to the complaint right now, but instead may ask the court to stay (delay) the forfeiture case until any criminal prosecution is over. However, to avoid losing the forfeiture case by default, the defendant must either file an answer to the complaint or file a motion for a stay, within thirty-five days of receipt of the complaint.
*477 The notice must also tell the defendant that he or she may wish to consult with a lawyer before deciding whether to file an answer, a motion for a stay, or any other pleading in the forfeiture case. The notice must state that, if a criminal case is pending, the defendant should contact the attorney who represents him or her in the criminal case, and that even if the defendant's criminal attorney cannot represent him or her in the forfeiture action, the attorney may be able to provide the defendant with some important advice about the matter.[16]
We acknowledge there may be other effective procedures that would address this issue. For example, a defendant's statements made in a forfeiture case might be barred from admission in a parallel criminal action, except for impeachment purposes. However, the Legislature has not taken that step, as it has, for example in the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-29(a), and at least in the context of this case, we do not conclude that the constitution requires it. There may be other practical approaches that would protect the rights of defendants without burdening prosecutors' offices, the OPD, or the court system. We refer this issue to the Civil Practice Committee and the Criminal Practice Committee for their consideration.
V
Lastly, we affirm the sentence. Contrary to defendant's argument, the judge provided a sufficiently detailed statement of reasons for the sentence, including defendant's multiple prior federal and state convictions and the fact that he was on parole when he committed the current offenses. We find no abuse of *478 discretion or other error in the sentence imposed. See State v. Blackmon, 202 N.J. 283, 297, 997 A.2d 194 (2010). Defendant's contentions are without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).
Affirmed in part, reversed in part, remanded in part. We do not retain jurisdiction.

Defendant was convicted of the following offenses: first-degree maintaining or operating a controlled dangerous substance (CDS) production facility, N.J.S.A. 2C:35-4 ; third-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) ; second-degree possession of CDS with intent to distribute within 500 feet of a public housing facility, N.J.S.A. 2C:35-7.1 ; two counts of third-degree possession of Buprenorphine and Oxycodone, N.J.S.A. 2C:35-10(a)(1) ; fourth-degree unlawful possession of a prescription legend drug, Yohimbine, in five or more dosage units, N.J.S.A. 2C:35-10.5(e)(2) ; second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) ; second-degree possession of a weapon while committing a CDS offense, N.J.S.A. 2C:39-4.1(a) ; fourth-degree possession of hollow-nose bullets, N.J.S.A. 2C:39-3(f) ; and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b).

The trial court did not impose a separate sentence for second-degree unlawful possession of a weapon, but merged that conviction into the conviction for second-degree possession of a weapon while committing a CDS offense.

We omit the address of the property in order to protect the privacy of the residents.

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

After the pre-trial motions were decided, the case was tried by a second judge.

It is unclear whether all of the defendants named in the forfeiture complaint were involved in the same drug investigation that led to defendant's arrest.

The State also sought forfeiture of $28 found on defendant's person when he was arrested, however, this opinion will focus on the $2900 found in the closet.

The copy of the answer that appears in defendant's appendix is dated May 11, 2011, and stamped "filed" on June 9, 2011, however, the certification of service bears defendant's handwritten note: "PLEASE REFER TO CORRESPONDENCE, RECEIVED BY CLERK OF SUPERIOR COURT, 4-29-11."

It is unclear whether or to what extent a stay was granted; the Law Division dismissed the forfeiture case on December 10, 2012, for lack of prosecution.

Because it begins "[i]f an answer is filed," subsection 3(f) could be construed to preclude a claimant from filing a stay motion without first filing an answer. N.J.S.A. 2C:64-3(f). However, we do not interpret the provision as requiring a defendant to file an answer before filing a stay motion. That construction would force a criminal defendant to make a potentially incriminating statement in order to obtain a stay, thereby defeating an obvious purpose of the stay provision. See Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 574, 39 A.3d 177 (2012) ("[A]mbiguities in language should not be read to achieve a result that the Legislature evidently did not intend."). The State's brief interprets subsection 3(f) as we do, asserting that defendant could have applied for a stay instead of filing an answer.

The agency is now known as the Division of Child Protection and Permanency.

In some states, such as New York, forfeiture actions are automatically stayed pending the outcome of a parallel criminal prosecution. See Kuriansky v. Bed-Stuy Health Care Corp., 135 A.D.2d 160, 525 N.Y.S.2d 225, 227 (1988).

We are not suggesting that the OPD is, or should be, responsible for representing defendants in forfeiture actions. However, as courts have noted in other contexts, competent defense counsel should be knowledgeable enough about collateral legal matters to give a client some basic legal advice. See Padilla v. Kentucky, 559 U.S. 356, 367-69, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (immigration). That would include knowing about the kinds of commonly-filed parallel civil actions that could result in a client making incriminating statements. See P.Z., 152 N.J. at 92-94, 703 A.2d 901 (Title Nine child abuse).

For the first time on appeal, defendant claims there was an error in the jury instruction about the forfeiture answer. That argument does not warrant discussion in a written opinion. R. 2:11-3(e)(2).

These procedures are not unusual. In the federal system, federal agencies that file certain types of civil complaints are required to serve a notice advising the defendants that a later criminal action may be filed and that any information provided in the civil action may be used against them in a criminal action. See United States v. Stringer, 535 F.3d 929, 934-35 (9th Cir. 2008) ; Kordel, 397 U.S. at 4, 90 S.Ct. 763.

The record of this case further supports the need for the procedures outlined here. As previously noted, the forfeiture complaint against defendant was part of an omnibus complaint the prosecutor's office filed against more than a dozen defendants. Many of the counts sought forfeiture of small amounts, such as fifty-five dollars, making it cost-ineffective for the defendants to retain counsel. Thus, it is highly likely that those defendants would be self-represented in the forfeiture case.