SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Roger Covil (A-35/36-18) (081267)**

**Argued September 9, 2019 -- Decided January 22, 2020**

**PATTERSON, J., writing for the Court.**

This appeal presents two issues. First, the Court considers defendant Roger Covil's challenge to the admission of the opinions of the State's drug expert witnesses -- as elicited through hypothetical questions -- in light of State v. Cain, 224 N.J. 410 (2016), and State v. Simms, 224 N.J. 393 (2016), which limited the State's use of hypothetical questions in the presentation of drug expert testimony in criminal trials but which were decided two years after defendant's trial. Second, the Court addresses defendant's argument that the trial court violated his constitutional rights and principles of fundamental fairness when it admitted into evidence a notice of motion for a writ of replevin and supporting certification that he served in a civil forfeiture action that had been stayed at his attorney's request. The Court considers that question against the backdrop of its recent holding in State v. Melendez, ___ N.J. ___ (2020), that an answer filed in a civil forfeiture action is inadmissible in the claimant's criminal trial.

Defendant was arrested when he received a package suspected of containing cocaine. A search of defendant incident to his arrest revealed three cellphones and $656 in cash. Laboratory testing later indicated that the package contained cocaine. The officers searched defendant's residence pursuant to a warrant and found a vacuum meal storage system, three boxes of heat-sealable bags, a roll of shrink wrap, two bags of rubber bands, $70,863, two cellphones, a cellphone charger, and financial and personal documents bearing defendant's name. Defendant was indicted on first-degree possession with intent to distribute five or more ounces of cocaine and two other charges.

Shortly after defendant was indicted, the State filed a civil forfeiture action seeking forfeiture of the $71,519 in currency seized. Defendant filed an answer to the complaint in the civil forfeiture action, stating a general denial of the allegations in the complaint. And, with the State's consent, the judge assigned to the civil forfeiture action stayed discovery as to defendant in that action and the forfeiture trial.

Notwithstanding the stay, defendant prepared and served on the State a notice of motion for the issuance of a writ of replevin and a supporting certification, in which he asserted that the currency in dispute was his property and demanded its return.

1

In a pretrial proceeding in defendant's criminal case, the trial court considered the admissibility of the testimony of the State's expert witnesses, Detective Omar Belgrave and Detective Jeffrey Dockery. The trial court admitted their testimony and authorized the State to pose to each expert a hypothetical question based exclusively on the trial evidence. The trial court later ruled that the notice of motion for a writ of replevin and certification were also admissible with minor redactions.

Defendant was tried over seven days and was convicted of first-degree possession with intent. Defendant appealed.

Citing State v. Green, 447 N.J. Super. 317, 328 (App. Div. 2016), the Appellate Division afforded this Court's decisions in Cain and Simms pipeline retroactivity and applied the principles of those cases to this appeal. It held that the State's expert opinion testimony improperly addressed the question of whether defendant possessed cocaine with intent to distribute, thereby usurping the jury's constitutional role as factfinder, and it reversed defendant's conviction. The Appellate Division did not reach defendant's constitutional challenge to the admission of the notice of motion for a writ of replevin and certification but stated that, if the State were to retry defendant, the trial court should reexamine its decision with respect to that issue.

The Court granted the State's petition for certification, 236 N.J. 241 (2018), and granted defendant's cross-petition limited to two issues: "(1) the use of defendant's answer filed in the civil forfeiture action, and (2) the testimony of the State's expert and the court's response thereto," 236 N.J. 241, 241-42 (2018).

**HELD:** The new rule stated in Cain and Simms was intended to apply prospectively to guide future trials, not retroactively to proceedings conducted prior to those decisions. At the time of defendant's trial, the governing law authorized the use of hypothetical questions such as the questions posed to the State's experts in this case. And in light of the distinctions between Melendez and the present case, there was no error in the trial court's admission of defendant's notice of motion for a writ of replevin and certification.

1. In State v. Odom, the Court cautioned that a hypothetical question posed to elicit drug expert testimony should be "carefully phrased" and required that it "clearly indicate that it is the witness' opinion that is being sought and that that opinion was formed assuming the facts and circumstances adduced only at trial"; the Court also required that the expert advise the jury "of the basis for that opinion." 116 N.J. 65, 81-82 (1989). The Court imposed some restrictions on what experts could say and directed trial courts to instruct jurors on the weight due the expert's opinion and to "emphasize[] that the determination of ultimate guilt or innocence is to be made only by the jury." Ibid. The Court applied and refined the principles stated in Odom in several decisions. The Court reviews those decisions and explains that the rule of Odom, as explained in those later decisions, provided the governing standard at the time of defendant's trial. (pp. 19-22)

2

2.  While defendant's appeal was pending, the Court decided Cain and Simms.  The Court reviews Cain and notes that the following principle is stated in that decision to guide courts and counsel in drug prosecutions:  "We now join those jurisdictions that limit the scope of expert testimony in drug cases.  Going forward, in drug cases, an expert witness may not opine on the defendant's state of mind."  224 N.J. at 429.  In Simms, the Court reiterated that holding and applied the principles set forth in Cain to exclude expert testimony in response to a lengthy hypothetical question on the existence of a conspiracy to distribute drugs.  224 N.J. at 403-09.  Cain and Simms thus restricted the use of hypothetical questions that Odom and its progeny had permitted.  (pp. 23-25)

3.  The Court reviews the principles that guide retroactivity analysis and notes that Cain provided express guidance as to the appropriate application of the new rule it announced through the use of the phrase "going forward."  Cain, 224 N.J. at 429.  The Cain Court stressed that it "now join[ed]" jurisdictions that limit the use of hypothetical questions in the presentation of drug expert evidence.  Ibid.  It stated a new rule for future trials and explained its decision to reverse the conviction in the case before it, notwithstanding the otherwise prospective application of its new rule.  Id. at 426-29, 431-33.  Thus, in Green -- on which the appellate court here relied -- the Appellate Division misconstrued the language of Cain.  The Court reaffirms that the rule stated in Cain and Simms was intended to apply only to the appeals in those two cases and to cases tried after the date of those decisions.  (pp. 25-29)

4.  The Court reviews the testimony of Belgrave and Dockery.  Each testified within the parameters of Odom and its progeny, and their testimony was followed by a proper limiting instruction.  There was no error in the trial court's application of the law on drug expert testimony that governed at the time of defendant's trial.  (pp. 29-32)

5.  To avoid a conflict between a defendant's privilege against self-incrimination and right to assert an interest in property, the Court concluded in Melendez that a claimant's answer filed in a civil forfeiture action pursuant to N.J.S.A. 2C:64-3(d) should not be admitted in his or her criminal trial.  ___ N.J. at ___ (slip op. at 18-20).  (pp. 32-34)

6.  When defendant served his notice of motion and certification, he was not required by any statute to do so.  This appeal thus raises none of the Fifth Amendment concerns addressed in Melendez.  Moreover, defendant affirmatively used those documents in his own defense at trial.  The trial court's admission of the notice of motion for a writ of replevin and certification did not constitute error.  (pp. 34-35)

**The judgment of the Appellate Division is REVERSED and defendant's convictions are REINSTATED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON's opinion.**

3

SUPREME COURT OF NEW JERSEY

A-35/36 September Term 2018

081267

State of New Jersey,

Plaintiff-Appellant/Cross-Respondent,

v.

Roger Covil,

Defendant-Respondent/Cross-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| September 9, 2019 | January 22, 2020 |

Paul H. Heinzel, Assistant Prosecutor, argued the cause for appellant/cross-respondent (Michael H. Robertson, Somerset County Prosecutor, attorney; Paul H. Heinzel and Alexander C. Mech, Assistant Prosecutor, of counsel and on the briefs).

Daniel S. Rockoff, Assistant Deputy Public Defender, argued the cause for respondent/cross-appellant (Joseph E. Krakora, Public Defender, attorney; Daniel S. Rockoff, of counsel and on the briefs).

Valeria Dominguez, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Valeria Dominguez, of counsel and on the brief).

1

Defendant Roger Covil was convicted of first-degree possession with intent to distribute five ounces or more of cocaine. The Appellate Division reversed defendant's conviction, and this Court granted cross-petitions for certification filed by the State and defendant.

This appeal presents two issues. First, we consider defendant's challenge to the trial court's admission of the opinions of the State's drug expert witnesses. Responding to hypothetical questions that tracked the evidence admitted at trial, one expert witness testified about the significance of packaging materials and currency in the distribution of cocaine, and the other testified about the use of cellphones in drug distribution.

Two years after defendant's trial, the Court decided State v. Cain, 224 N.J. 410 (2016), and State v. Simms, 224 N.J. 393 (2016). Those decisions limited the State's use of hypothetical questions in the presentation of drug expert testimony in criminal trials. Reversing defendant's conviction in this case, the Appellate Division retroactively applied Cain and Simms, and held that the trial court committed error when it admitted the testimony of the State's expert witnesses.

As the language of Cain makes clear, the new rule stated in Cain and Simms was intended to apply prospectively to guide future trials, not retroactively to proceedings conducted prior to those decisions. At the time of defendant's trial, the governing law authorized the use of hypothetical questions such as the questions posed to the State's experts in this case. The Court accordingly reverses the Appellate Division's judgment with respect to that issue.

Second, we address defendant's argument that the trial court violated his constitutional rights and principles of fundamental fairness when it admitted into evidence a notice of motion for a writ of replevin and supporting certification that he served in a civil forfeiture action that had been stayed at his attorney's request. In those pleadings, defendant asserted that he owned $71,519 in currency that had been seized from his person and his residence, claimed that he lawfully obtained those funds, and demanded the return of those funds.

As we just held in State v. Melendez, three provisions of the civil forfeiture statute -- N.J.S.A. 2C:64-3(d), -3(e), and -3(f) -- could operate to compel a criminal defendant to choose between asserting his due process right to claim property subject to forfeiture and invoking his Fifth Amendment privilege against self-incrimination, thus implicating the United States

3

Supreme Court's ruling in <u>Garrity v. New Jersey</u>, 385 U.S. 493, 496-500 (1967). ___ N.J. ___, ___ (2020) (slip op. at 12-17). To protect the Fifth Amendment right of such a claimant, we found that an answer filed in a civil forfeiture action pursuant to N.J.S.A. 2C:64-3(f) is inadmissible in the claimant's criminal trial. <u>Id.</u> at ___ (slip op. at 17-20).

In contrast to the defendant in <u>Melendez</u>, who was required to serve an answer in the civil forfeiture action in order to defend his interest in the disputed property, defendant in this case was not compelled to file any pleadings in the civil forfeiture action against him when he served his motion for a writ of replevin because the forfeiture action had been stayed at his attorney's behest. In addition, during defendant's criminal trial, his counsel affirmatively relied on defendant's certification in the civil forfeiture action as uncontroverted proof that defendant obtained the seized currency through lawful means.

In light of the distinctions between <u>Melendez</u> and the present case, we find no error in the trial court's admission of defendant's notice of motion for a writ of replevin and certification.

We therefore reverse the Appellate Division's judgment and reinstate defendant's conviction.

## I.

Based on information obtained in a drug investigation, Detective John Walsh of the Somerset County Prosecutor's Office was directed to inspect a package at a United Parcel Service (UPS) facility.[1]  The UPS package label bore the return address of a business in Phoenix, Arizona.  The package was addressed to "Kathy Land" at 308 Coventry Lane in Somerset, a residence in an apartment complex.  Detective Walsh arranged for a K-9 unit to conduct a drug detection sniff of the UPS package.  A drug detection dog reacted to the package in a manner that, according to the dog's handler, indicated the presence of drugs.

Police officers obtained a search warrant authorizing them to open the package, and examine its contents, and to search 308 Coventry Lane if the package, once delivered to that address, was brought into the residence.  Pursuant to the warrant, an officer opened the package and field-tested its contents.  The field test indicated the presence of cocaine.

The officer then resealed the package and gave it to a UPS driver, accompanied by a police officer posing as a UPS trainee, for delivery to 308 Coventry Lane.  Prior to the delivery of the package, officers observed

---

[1]  The facts are summarized based on the trial record.

defendant walking around the apartment complex looking at vehicles in the parking lot.

The UPS driver and the police officer posing as a UPS trainee delivered the package to 308 Coventry Lane. The UPS driver rang the doorbell at the front door of the residence. The driver and the officer waited for a response, then left the package near the front entrance of the home.

Ten minutes later, defendant walked to the front entrance of 308 Coventry Lane, picked up the package, and carried it into the residence. Less than a minute later, he emerged from the residence, still holding the package. According to officers conducting surveillance in the apartment complex, defendant began to tear the UPS label off the package as he walked away from the residence. When officers approached defendant, identified themselves, and instructed him to stop, defendant threw the package into a line of trees and attempted to run away. After defendant ran about ten yards, officers placed him under arrest. A search of defendant incident to his arrest revealed three cellphones and $656 in cash. Laboratory testing later indicated that the package contained 1006.6 grams of cocaine.

Pursuant to the search warrant, officers searched 308 Coventry Lane. They found a "Seal-A-Meal" vacuum storage system and three boxes of "Food Saver" heat-sealable bags in a hall closet, a roll of shrink wrap in the

6

basement, and two bags of rubber bands in a bedroom. In the same bedroom, officers found $70,863 in United States currency in denominations ranging from $100 bills to $5 bills, as well as two cellphones, a cellphone charger, and financial and personal documents bearing defendant's name.

Defendant later stipulated that 308 Coventry Lane was his residence and that the room in which the currency and documents were found was his bedroom.

## II.

## A.

Defendant was indicted on three charges: first-degree possession with intent to distribute five ounces or more of cocaine, contrary to N.J.S.A. 2C:35-5(a)(1) and (b)(1); second-degree conspiracy to distribute cocaine, contrary to N.J.S.A. 2C:35-5(a)(1) and (b)(1), N.J.S.A. 2C:5-2; and fourth-degree resisting arrest by flight, contrary to N.J.S.A. 2C:29-2(a).

To convict defendant of the first-degree charge, the State had the burden to prove beyond a reasonable doubt that he "knowingly or purposely" possessed five ounces or more of cocaine with the intent to distribute it. N.J.S.A. 2C:35-5(a)(1), (b)(1).

B.

Shortly after defendant was indicted, the State filed a civil forfeiture action pursuant to N.J.S.A. 2C:64-3. In that action, the State sought forfeiture of the $71,519 in currency seized in the search incident to defendant's arrest and the execution of the search warrant at 308 Coventry Lane. In its civil forfeiture complaint, the State alleged that the currency at issue was associated with drug transactions.

In accordance with N.J.S.A. 2C:64-3(c), the State served the summons and forfeiture complaint on defendant, identifying him as a person "known to have a property interest" in the currency subject to forfeiture. The summons advised defendant that in order to contest the State's action, he was required to file a "written answer or motion and proof of service" within thirty-five days of service.

Represented by the attorney who served as his counsel in his criminal matter, defendant filed an answer to the complaint in the civil forfeiture action, stating a general denial of the allegations in the complaint. He also moved to stay that action pending the resolution of his criminal matter. With the State's consent, the judge assigned to the civil forfeiture action stayed discovery as to defendant in that action and the forfeiture trial "until related criminal

8

proceedings against [defendant] have been concluded by the entry of final judgment or until further Order of the Court."

Notwithstanding the order staying the civil forfeiture action, defendant, then incarcerated, prepared and served on the State in that action a notice of motion for the issuance of a writ of replevin pursuant to Rule 4:61-1, and a supporting certification.[2] As his attorney later advised the trial court in the criminal matter, defendant neither consulted with his counsel regarding his plan to serve the notice of motion and certification nor informed his counsel of that plan. Defense counsel learned of the existence of those pleadings when the State sent him a copy of them.

In his certification, defendant asserted that the currency in dispute was his property and demanded its return, along with the return of enumerated items that had been seized by police officers but were not the subject of the State's civil forfeiture action. Defendant represented that the currency and other property were "derived from a number of legitimate sources, including, but not limited to, gambling winnings, personal loans, business loans and the sale of personal belongings." Defendant contended that there was "no credible nexus between the property seized and any unlawful acts alleged by the State."

---

[2] Although defendant served the notice of motion for a writ of replevin and certification on the State in the civil forfeiture action, there is no indication in the record that he filed those pleadings with the court in that action.

9

C.

In a pretrial proceeding in defendant's criminal case, the trial court considered the admissibility of the testimony of the State's expert witnesses. The State designated Detective Omar Belgrave as an expert witness about the significance of the quantity, packaging, and monetary value of the narcotics seized, the significance of contemporaneous possession of drug paraphernalia, and the significance of the quantity and denomination of the currency seized. The State designated Detective Jeffrey Dockery as an expert witness on the significance of defendant's possession of cellphones.

Defendant objected to the proposed testimony of both experts. At defendant's request, the trial court conducted an N.J.R.E. 104(c) hearing to determine the admissibility of Dockery's testimony. It held oral argument as to the admissibility of the testimony of both experts.

Citing State v. McLean, 205 N.J. 438 (2011), State v. Reeds, 197 N.J. 280 (2009), and State v. Odom, 116 N.J. 65 (1989), the trial court admitted the testimony of Belgrave and Dockery. The court authorized the State to pose to each expert a hypothetical question based exclusively on the trial evidence and stated that it would give the jury a limiting instruction on the use and significance of the expert testimony.

In another pretrial proceeding, the State sought to admit into evidence the notice of motion for a writ of replevin and certification. The State sought leave to redact the certification to remove from the document defendant's contention that his property was derived from legitimate sources, as well as other portions of the certification. Defendant objected, contending that if those documents were to be admitted at all, they should be admitted in unredacted form. The trial court ruled that the notice of motion for a writ of replevin and certification were admissible with minor redactions; defendant's assertion that his property was derived from legitimate sources was included in the version of the certification that was admitted into evidence at his criminal trial.

D.

Defendant was tried before a jury over seven days.

Prior to the State's presentation of Belgrave's expert testimony, the trial court conferred with counsel regarding the hypothetical question to be posed to the witness. Defendant reiterated his objection to the use of a hypothetical question on the issue of his alleged intent to distribute cocaine. At defendant's request, the court amended the hypothetical question. The court qualified Belgrave as an expert in narcotics identification, trafficking, and distribution.

After a preliminary inquiry to lay a foundation for Belgrave's opinion, the State posed the following hypothetical question to the expert witness:

> A package containing 1006.6 grams of cocaine is delivered to a person's apartment. The person picks up the package, police search the package, the person, and the person's apartment. The package contains 1006.6 grams of cocaine, wrapped in plastic. Seized from the person is $656, in the following denominations: 32 $20.00 bills, and 16 $1 bills. No personal use drug paraphernalia is seized from the person or his apartment. Two bags of rubber bands are seized in the person's bedroom. In the person's bedroom closet is $70,863 in cash, in the following denominations: 330 $100 bills; 147 $50 bills; 1,449 $20.00 bills; 108 $10 bills; 89 $5 bills; and 32 $.25 coins. In the basement is seized one roll of plastic shrink wrap. In the hallway closet is a Seal-a-Meal vacuum storage system, and three boxes of Food Saver heat sealable bags. So my question for you, is based upon these hypothetical facts, do you have an opinion as to whether the cocaine in this hypothetical is possessed with intent to distribute?

Belgrave responded, "[m]y opinion is [that] in this hypothetical, is yes, that cocaine was possessed with the intent to distribute." He then explained the basis for his response. On cross-examination, defendant challenged the foundation and substance of Belgrave's opinion.

Prior to Dockery's testimony, defendant renewed his objection to the use of a hypothetical question in the State's inquiry of Dockery, and also objected to the scope of the State's proposed question. At the trial court's direction,

12

counsel for the State and defendant conferred on the wording of the hypothetical question. The court qualified Dockery as an expert on the use of cellphones in the distribution of drugs.

After laying a foundation for Dockery's expert opinion, the State posed the following hypothetical question:

> A package containing 1006.6 grams of cocaine is in a person's possession; the person has three cell phones on his person; one is a New Jersey area code with a known subscriber, the other two are prepaid phones with no subscriber information, and limited, if any, call history or contact information. The person has two cell phones in his bedroom, they are prepaid phones, they have limited if any call history, or contact information. Based on those hypothetical facts, do you have an opinion as to whether the possession of five cell phones in this hypothetical question is indicative of conduct commonly associated with possession with intent to distribute cocaine?

Dockery responded that he considered the conduct described in the hypothetical to be "consistent with how phones would be used in the manner to . . . distribute narcotics, for several reasons." He then explained the basis for his conclusion. Defense counsel cross-examined Dockery about his opinion and the basis for that opinion.

The trial court gave a limiting instruction to the jury with respect to both of the State's expert witnesses. It cautioned the jury that it was not bound by either expert's opinion and that it should consider each opinion and give it the

13

weight to which the jury deemed that opinion to be entitled. The court noted that "whether that weight be great or slight is for you to determine, or you may reject [the opinion]."

The trial court admitted into evidence the notice of motion for a writ of replevin and certification that defendant served in the civil forfeiture action, with minor redactions in accordance with the court's pretrial ruling. Neither party presented testimony regarding that evidence. Defense counsel, however, affirmatively relied on defendant's notice of motion and certification in his opening statement, asserting that defendant would not have sought the return of his money were he a drug dealer, as the State alleged he was. Defense counsel reiterated that point in summation, and further argued that defendant's certified statement that he legally earned the money constituted unrebutted evidence that defendant derived the money not from drug distribution, but from legal sources.

In its final charge to the jury, the trial court instructed the jury not to infer from the fact that evidence was seized that it was associated with criminal activity.

14

The jury convicted defendant of first-degree possession with intent to distribute five ounces or more of cocaine.[3]  After denying defendant's motion for a judgment of acquittal pursuant to Rule 3:18-2 and his motion for a new trial pursuant to Rule 3:20-1, the trial court imposed a discretionary extended term of twenty-two years' incarceration with eighty-eight months' parole ineligibility in accordance with N.J.S.A. 2C:43-6(f).

E.

Defendant appealed his conviction.  Relying on Cain and Simms, which were decided after briefing in defendant's appeal but prior to argument before the Appellate Division, defendant asserted that the trial court erred when it admitted the expert testimony of Belgrave and Dockery.  He also contended that the trial court's admission of the notice of motion for a writ of replevin and the certification constituted reversible error.

Citing the decision of another panel in State v. Green, 447 N.J. Super. 317, 328 (App. Div. 2016), the Appellate Division afforded this Court's

---

[3]  Prior to the jury's deliberations, the trial court granted defendant's motion under Rule 3:18-1 and dismissed the charges of conspiracy to distribute cocaine and resisting arrest by flight.  The trial court, as factfinder, convicted defendant of the disorderly persons offense of possession with intent to use drug paraphernalia, contrary to N.J.S.A. 2C:36-2, and merged that offense with defendant's first-degree offense for purposes of sentencing.

decisions in <u>Cain</u> and <u>Simms</u> pipeline retroactivity.[4]  In <u>Green</u>, the Appellate Division determined -- "unless we are instructed to the contrary" -- that this Court "intended pipeline retroactivity to apply to the <u>Cain</u> decision."  <u>Ibid.</u> The <u>Green</u> panel acknowledged the use of the term "[g]oing forward" in <u>Cain</u> but viewed that term to mean only that the Court did not intend to apply <u>Cain</u> to cases in which final judgment had been entered and all appeals had been exhausted.  <u>Id.</u> at 327 (citing <u>Cain</u>, 224 N.J. at 429).

Finding <u>Green</u> dispositive as to retroactivity, the Appellate Division in this case applied the principles of <u>Cain</u> and <u>Simms</u> to this appeal.  It held that the State's expert opinion testimony improperly addressed the question of whether defendant possessed cocaine with intent to distribute, thereby usurping the jury's constitutional role as factfinder.  The Appellate Division concluded that the trial court's error deprived defendant of a fair trial and reversed defendant's conviction.

The Appellate Division rejected defendant's challenge to the trial court's denial of his motion to suppress the contents of the UPS package.  It did not reach defendant's constitutional challenge to the trial court's admission of the

---

[4]  The term "pipeline retroactivity" denotes the application of a new rule of criminal procedure to "all future cases, the case in which the rule is announced, and any cases still on direct appeal."  <u>State v. Knight</u>, 145 N.J. 233, 249 (1996); <u>accord</u> <u>State v. Henderson</u>, 208 N.J. 208, 301-02 (2011); <u>State v. Dock</u>, 205 N.J. 237, 256 (2011).

notice of motion for a writ of replevin and certification served in the civil forfeiture action. The Appellate Division stated, however, that in the event that the State were to retry defendant, the trial court should reexamine its decision with respect to that issue.

The Court granted the State's petition for certification, 236 N.J. 241 (2018), and granted defendant's cross-petition limited to two issues: "(1) the use of defendant's answer filed in the civil forfeiture action, and (2) the testimony of the State's expert and the court's response thereto," 236 N.J. 241, 241-42 (2018). We also granted the Attorney General's motion to participate as amicus curiae.

## III.

The State urges the Court to apply Cain prospectively and asserts that, even if the Court affords that decision pipeline retroactivity and finds error in the trial court's admission of the expert testimony, that error was harmless. The State contends that the Court should review the trial court's admission of defendant's notice of motion for a writ of replevin and certification under the doctrine of invited error and should affirm the trial court's admission of the evidence.

Defendant argues that the Court should afford Cain pipeline retroactivity and apply that decision in this appeal. He also contends that the State's

17

hypothetical questions to its experts violated the case law that governed prior to Cain. Defendant argues that the admission of the notice of motion for a writ of replevin and certification violated his constitutional rights, as well as principles of fundamental fairness, and deprived him of a fair trial.

Amicus curiae the Attorney General views the plain language of Cain to express the Court's intent that the principles of that decision apply only prospectively. The Attorney General asserts that the trial court's admission of the notice of motion for a writ of replevin and certification did not violate defendant's constitutional rights and agrees with the State that if that decision constituted error, any such error was harmless.

IV.

A.

We first address whether the trial court erred when it held that the expert testimony of Belgrave and Dockery, elicited by means of hypothetical questions based on the trial evidence, met the standard of N.J.R.E. 702. That rule authorizes the admission of expert testimony "in the form of an opinion" "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Ibid. To satisfy N.J.R.E. 702, the expert testimony must "concern[] a subject matter beyond the ken of an average juror." Cain, 224 N.J. at 420 (quoting Reeds,

18

197 N.J. at 290). "Although expert testimony may 'embrace[] an ultimate issue to be decided by the trier of fact,' N.J.R.E. 704, the testimony can be excluded if 'the risk of . . . undue prejudice, confusion of issues, or misleading the jury' substantially outweighs its probative value, N.J.R.E. 403." State v. Sowell, 213 N.J. 89, 100 (2013) (alteration and ellipsis in original).

In cases decided over a span of three decades, this Court applied N.J.R.E. 702 to drug expert testimony elicited by hypothetical questions premised on the evidence presented at trial. We review those decisions in turn.

1.

In Odom, the Court addressed a drug expert's testimony in response to a hypothetical question. 116 N.J. at 71, 76-82. There, the prosecutor summarized the evidence against the defendant in the hypothetical question and inquired whether the facts presented in the question indicated drug possession for personal use or drug possession with intent to distribute. Id. at 69. With no objection from the defendant, the expert stated his opinion that the cocaine found "[was] possessed with intent to distribute," and gave the basis for his opinion. Ibid.

Affirming the defendant's conviction, the Court held that "as long as the expert does not express his opinion of [the] defendant's guilt but simply characterizes defendant's conduct based on the facts in evidence in light of his

19

specialized knowledge, the opinion is not objectionable even though it embraces ultimate issues that the jury must decide." Id. at 79. The Court cautioned that the hypothetical question should be "carefully phrased" and limited to the evidence presented

> about the manner of packaging and processing for use or distribution, the significance of various quantities and concentrations of narcotics, the roles of various drug paraphernalia, characteristics of the drugs themselves, the import of circumstances surrounding possession, the conduct of the possessor and the manner in which drugs may be secreted or otherwise possessed for personal use or distribution.
>
> [Id. at 81-82 (quoting State v. Odom, 225 N.J. Super. 564, 573 (App. Div. 1988)).]

The Court approved the use of "a hypothetical question through which [the expert] can advise the jury of the significance of these facts on the issue of possession" and authorized the State to ask a drug expert "if, based on these assumed facts, he or she has an opinion whether the drugs were possessed for personal use or for the purpose of distribution." Odom, 116 N.J. at 82. The Court required that the hypothetical question "clearly indicate that it is the witness' opinion that is being sought and that that opinion was formed assuming the facts and circumstances adduced only at trial"; it also found it essential that, following the statement of the expert's opinion, he or she advise the jury "of the basis for that opinion." Ibid. The Court prohibited the expert

from using "the precise terminology of the statute defining the criminal offense and its necessary elements," and from stating the defendant's name. Ibid. Finally, the Court directed trial courts to instruct juries on the weight that jurors should give to the expert's opinion and to "emphasize[] that the determination of ultimate guilt or innocence is to be made only by the jury." Ibid.

The Court applied the holding of Odom in several decisions, refining the principles stated in that case. In State v. Summers, the Court upheld the admission of expert testimony elicited by the question of whether an individual described in the hypothetical possessed the drugs in question for purposes of distribution. 176 N.J. 306, 312-16 (2003). Then, in State v. Nesbitt, the Court declined to find plain error in the admission of the State's expert testimony but cautioned against the use of expert testimony "to state that which is obvious" and reiterated that the trial court must act as gatekeeper to determine "whether there exists a reasonable need for an expert's testimony." 185 N.J. 504, 507-08, 514-15 (2006). Thereafter, in Reeds, the Court reversed the defendant's conviction because the expert had offered an opinion on the defendant's constructive possession of drugs that was "tantamount to a legal conclusion, resulting in a veritable pronouncement of guilt on the two possession crimes,"

21

thus usurping the jury's exclusive authority to determine guilt or innocence. 197 N.J. at 297-300.

Lastly, in McLean, the Court cautioned that courts should not permit experts to

> intrude on the province of the jury by offering, in the guise of opinions, views on the meaning of facts that the jury is fully able to sort out without expert assistance and that expert opinions may not be used to express a view on the ultimate question of guilt or innocence.
>
> [205 N.J. at 461.]

The distinction between proper and improper drug expert testimony was illustrated by the Court's holding in Sowell; there, the Court allowed the presentation of expert opinion about "the value of heroin, how it is packaged, how drugs are smuggled into prison, [and] whether thirty envelopes of heroin reflect distribution or personal use." 213 N.J. at 104. The Court barred expert testimony, however, regarding a question within the understanding of the average juror: whether a drug transaction has taken place when "one person handed an object to another, who placed it in a bag of potato chips in which officers found heroin moments later." Ibid.

The rule of Odom, as explained in those later decisions, provided the governing standard at the time of defendant's trial.

22

2.

While defendant's appeal in this case was pending, the Court decided

Cain and Simms.  In Cain, the State posed a protracted hypothetical question

to a drug expert regarding the import of surveillance observations and seized

evidence on the question of intent to distribute.  224 N.J. at 431; accord

Simms, 224 N.J. at 406-09.  Reversing the defendant's conviction, the Court

reiterated the admissibility of drug expert opinion so that jurors may

understand "the arcana of drug-distribution schemes."  Cain, 224 N.J. at 426;

see also Simms, 224 N.J. 407-09.  The Court also recognized that hypothetical

questions may be appropriate in particular settings, such as cases in which

critical facts are in dispute, Cain, 224 N.J. at 430, but observed that

> an expert is no better qualified than a juror to determine the defendant's state of mind after the expert has given testimony on the peculiar characteristics of drug distribution that are beyond the juror's common understanding.  In drug cases, such ultimate-issue testimony may be viewed as an expert's quasi-pronouncement of guilt that intrudes on the exclusive domain of the jury as factfinder and may result in impermissible bolstering of fact witnesses.  The prejudice and potential confusion caused by such testimony substantially outweighs any probative value it may possess.
>
> [Id. at 427-28.]

23

The Court stated the following principle to guide courts and counsel in drug prosecutions:

> We now join those jurisdictions that limit the scope of expert testimony in drug cases. Going forward, in drug cases, an expert witness may not opine on the defendant's state of mind. Whether a defendant possessed a controlled dangerous substance with the intent to distribute is an ultimate issue of fact to be decided by the jury.
>
> [Id. at 429 (first emphasis added).]

The Court noted that "[i]n the end, we must rely on the sound discretion of our trial judges to follow the guidance given here." Id. at 430.

In Simms, the Court reiterated the holding of Cain and applied the principles set forth in that case to exclude expert testimony in response to a lengthy hypothetical question on the existence of a conspiracy to distribute drugs. 224 N.J. at 403-09. The Court concluded that "[a] hypothetical question in a drug case should not be used as a prosecutorial tool to sum up an entire case in a single question for the purpose of eliciting an expert's opinion on a defendant's guilt." Id. at 408. The Court held that the expert in Simms had rendered an "ultimate-issue opinion" on the defendant's guilt. Id. at 407. Notwithstanding the defendant's failure to object to the hypothetical question, the Court held that the trial court's error had been "clearly capable of

24

producing an unjust result," warranting reversal of the defendant's conviction. Ibid. (quoting R. 2:10-2).

Cain and Simms thus restricted the use of hypothetical questions that Odom and its progeny had permitted. We now turn to the question of whether Cain and Simms apply retroactively to this appeal.

B.

In determining the retroactivity of a rule, a court's threshold consideration is whether the holding constitutes a "new rule" in that it "'breaks new ground or imposes a new obligation on the States or Federal Government.'" State v. Feal, 194 N.J. 293, 308 (2008) (quoting State v. Lark, 117 N.J. 331, 339 (1989)). If a new rule has been announced, the court must choose among four options with respect to its application:

> The Court may decide to apply the rule purely prospectively, applying it only to cases in which the operative facts arise after the new rule has been announced. Alternatively, the Court may apply the new rule in future cases and in the case in which the rule is announced, but not in any other litigation that is pending or has reached final judgment at the time the new rule is set forth. A third option is to give the new rule 'pipeline retroactivity,' rendering it applicable in all future cases, the case in which the rule is announced, and any cases still on direct appeal. Finally, the Court may give the new rule complete retroactive effect, applying it to all cases, including those in which final judgments have been entered and all other avenues of appeal have been exhausted.

25

> [State v. Knight, 145 N.J. 233, 249 (1996) (citing State
> v. Burstein, 85 N.J. 394, 402-03 (1981)).]

In choosing the appropriate application of a new rule, the court weighs three factors: "(1) the purpose of the rule and whether it would be furthered by a retroactive application, (2) the degree of reliance placed on the old rule by those who administered it, and (3) the effect a retroactive application would have on the administration of justice." State v. Cummings, 184 N.J. 84, 97 (2005) (quoting Knight, 145 N.J. at 251).

In Cain, the Court provided express guidance as to the appropriate application of the new rule it announced through the use of the phrase "going forward," which clearly reflects the intention that the new principles would govern future trials. Cain, 224 N.J. at 429.

In State v. Dock, 205 N.J. 237, 252 (2011), the Court addressed the import of the phrase "going forward" with respect to the question of retroactivity. There, the defendant argued that this Court's presumptive ban on the use of physical restraints on witnesses, announced eight years earlier in State v. Artwell, 177 N.J. 526, 539 (2003), should apply retroactively to his case, in which a witness had appeared before the jury in handcuffs. Dock, 205 N.J. at 251-52. Before determining whether Artwell's holding as to physical restraints on witnesses was intended to be retroactive, the Court in Dock

26

contrasted that holding with a second rule announced in Artwell: a prospective prohibition on defense witnesses wearing prison garb before a jury. Id. at 252. It observed:

> At the outset, it is critical to differentiate between what Artwell holds and what it does not. In Artwell, a defense witness was compelled to testify before the jury in both prison garb and in restraints. 177 N.J. at 530. In respect of the former, the Court concluded that, "going forward, a trial court may not require a defendant's witness to appear at trial in prison garb." Id. at 539. Thus, the Court made clear that its ruling proscribing defense witnesses testifying in prison garb was prospective only.
>
> [Dock, 205 N.J. at 252.]

The Court thus confirmed that when the phrase "going forward" is used to state a new rule governing criminal trials, that rule applies prospectively to cases other than the appeal before the Court. Ibid.; see also State v. Green, 239 N.J. 88, 106 (2019) (stating that "[t]o guard against the risk of mugshot exposure," enhanced identification practices would be required "going forward"); State v. Miles, 229 N.J. 83, 101 (2017) ("[G]oing forward, for offenses committed after the issuance of this opinion, we hold that the same-elements test will serve as the singular framework for determining whether two charges are in fact the same offense for purposes of double-jeopardy analysis."); State v. Lunsford, 226 N.J. 129, 155 (2016) (directing that, "going

27

forward, the State must apply for a court order under N.J.S.A. 2A:156A-29(e) to obtain telephone billing or toll records"); State v. Mohammed, 226 N.J. 71, 89 (2016) (holding that, "going forward," the trial court, along with counsel, has a duty to follow prescribed procedures when the court observes or is notified of juror inattentiveness at trial); State v. Feliciano, 224 N.J. 351, 356 (2016) (holding that, "going forward," when police officers begin to monitor a new telephone facility under a provision of the New Jersey Wiretap Act, they "must notify a wiretap judge within 48 hours of the switch and obtain authorization to begin monitoring the new facility"); State v. Witt, 223 N.J. 409, 450 (2015) (directing that the rule of law stated in that case was a new rule to be "given prospective application from the date of this opinion" and holding that, "[g]oing forward, searches on the roadway based on probable cause arising from unforeseeable and spontaneous circumstances are permissible").

As used in Cain, the term "going forward" clearly conveys the same intent. The Court stressed that it "now join[ed]" jurisdictions that limit the use of hypothetical questions in the presentation of drug expert evidence. Cain, 224 N.J. at 429. It stated a new rule for future trials and explained its decision to reverse the conviction in the case before it, notwithstanding the otherwise prospective application of its new rule. Id. at 426-29, 431-33. Thus, in Green

28

-- on which the appellate court here relied -- the Appellate Division

misconstrued the language of <u>Cain</u> on the question of retroactivity.  See <u>Green</u>,

447 N.J. Super. at 326-28.[5]

We reaffirm that the rule stated in <u>Cain</u> and <u>Simms</u> was intended to

apply only to the appeals in those two cases and to cases tried after the date of

those decisions.  We now consider whether the trial court's determination to

allow the hypothetical questions and their responses comported with the

standards that applied before the Court decided <u>Cain</u> and <u>Simms</u>.

### C.

When it found that the expert testimony of Belgrave and Dockery

concerned subjects not within the jury's common knowledge and experience,

and admitted that testimony at defendant's trial, the trial court properly applied

---

[5]  At oral argument, counsel appearing on behalf of the Attorney General's Office informed the Court that the Attorney General is aware of six cases in which the Appellate Division applied <u>Cain</u> and <u>Simms</u> retroactively in accordance with <u>Green</u> and reversed the defendants' convictions.  She indicated that, to the best of her knowledge, two of those cases have been retried.  Counsel for the Attorney General stated that if this Court overruled <u>Green</u>, the Attorney General would not take the position that defendants granted new trials pursuant to <u>Green</u> are no longer entitled to that relief.  She stated that if any such cases were retried, <u>Cain</u> and <u>Simms</u> would govern the admission of drug expert testimony in those trials.  The Court appreciates the Attorney General's commitment to handle any such cases in accordance with those representations.

the principles of <u>Odom</u> and the other case law that governed when this case was tried.

Belgrave, qualified as an expert in narcotics identification, trafficking, and distribution, addressed a subject "within the specialized knowledge of the expert." <u>Odom</u>, 116 N.J. at 81. The State questioned the expert to lay a foundation for the hypothetical question, as <u>Odom</u> required. <u>See ibid.</u>; <u>see also</u> <u>Sowell</u>, 213 N.J. at 99-100; <u>Nesbitt</u>, 185 N.J. at 515. The hypothetical question that the State posed was limited to the evidence adduced at trial regarding the volume and packaging of the cocaine delivered in the UPS package, the paraphernalia and currency seized, and the absence of personal-use paraphernalia. <u>See</u> <u>Odom</u>, 116 N.J. at 81; <u>see also</u> <u>Sowell</u>, 213 N.J. at 107; <u>McLean</u>, 205 N.J. at 455; <u>Summers</u>, 176 N.J. at 314-15. The hypothetical question made clear to the jury that Belgrave responded only to the facts presented. <u>See</u> <u>Odom</u>, 116 N.J. at 81; <u>see also</u> <u>Sowell</u>, 213 N.J. at 107; <u>McLean</u>, 205 N.J. at 455; <u>Summers</u>, 176 N.J. at 314-15. After Belgrave's response to the hypothetical question, the State further inquired about the basis of his opinion, as <u>Odom</u> mandated. <u>See</u> <u>Odom</u>, 116 N.J. at 71, 82; <u>see also</u> <u>Sowell</u>, 213 N.J. at 103, 106; <u>Nesbitt</u>, 185 N.J. at 513; <u>Summers</u>, 176 N.J. at 315. In a limiting instruction, the trial court explained to the jury how it should evaluate the expert's testimony. <u>See</u> <u>Odom</u>, 116 N.J. at 82; <u>see also</u>

30

Sowell, 213 N.J. at 103-04; McLean, 205 N.J. at 455; Summers, 176 N.J. at 315.[6]

Dockery, qualified as an expert on the use of cellphones in the distribution of controlled dangerous substances, similarly testified within the parameters of Odom and its progeny. The hypothetical question posed to Dockery, which was drafted by the State and edited by both counsel, was limited to the trial evidence regarding defendant's possession of cocaine and his use of multiple cellphones; that question made clear that the expert should address only the evidence identified in the hypothetical. See Odom, 116 N.J. at 79-83; see also Sowell, 213 N.J. at 107; McLean, 205 N.J. at 455; Reeds, 197 N.J. at 293; Summers, 176 N.J. at 314-15. After Dockery stated that the conduct described in the hypothetical was "consistent with how phones would be used in the manner to . . . distribut[e] narcotics, for several reasons," the

_____

[6] Defendant asserted for the first time on appeal that the trial court violated N.J.R.E. 404(b) and State v. Cofield, 127 N.J. 328, 336 (1992), when it permitted Belgrave to testify that the currency identified in the State's hypothetical question "obviously is either proceeds or monies that's going to be used to purchase more cocaine." At trial, defendant objected to "the characterization" in the expert witness's testimony, but did not cite N.J.R.E. 404(b) or Cofield, and accordingly this Court reviews the trial court's decision for plain error. R. 2:10-2. We view the witness's testimony about the significance of the currency to be an explanation of his opinion regarding the hypothetical facts in compliance with Odom, not other-crimes evidence against defendant admitted in violation of N.J.R.E. 404(b), and accordingly do not find plain error.

State questioned him on the basis for his opinion. See Odom, 116 N.J. at 71, 82; see also Sowell, 213 N.J. at 103, 106; Nesbitt, 185 N.J. at 513; Summers, 176 N.J. at 315. Finally, the trial court gave the jury a proper limiting instruction. See Odom, 116 N.J. at 82; see also Sowell, 213 N.J. at 103-04; McLean, 205 N.J. at 455; Summers, 176 N.J. at 315.

In short, we find no error in the trial court's application of the law on drug expert testimony that governed at the time of defendant's trial and therefore reverse the Appellate Division's judgment reversing defendant's conviction and granting him a new trial.

V.

A.

We turn now to defendant's argument that the trial court violated defendant's state and federal constitutional rights and principles of fundamental fairness when it admitted into evidence defendant's notice of motion for a writ of replevin and certification.

Defendant specifically asserts that the admission of those documents violated his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Paragraphs 1, 9, and 10 of the New Jersey Constitution. Defendant contends that because a provision of the civil forfeiture statute, N.J.S.A. 2C:64-3(d), requires a claimant to answer a civil

32

forfeiture complaint before moving to stay the forfeiture action, he was compelled to waive his privilege against self-incrimination in order to assert his due process right to that property. In addition, defendant relies on the Appellate Division's opinion in State v. Melendez, 454 N.J. Super. 445, 475 (App. Div. 2018), aff'd and modified, ___ N.J. at ___, in which that court found that the admission of the defendant's answer in his criminal trial violated principles of fundamental fairness. Defendant contends that his notice of motion for a writ of replevin and certification are analogous to the answer that the defendant in Melendez filed in accordance with N.J.S.A. 2C:64-3(d).

In Melendez, this Court affirmed and modified the Appellate Division's judgment. Melendez, ___ N.J. at ___ (slip op. at 22). We recognized that when a civil forfeiture action is filed during the pendency of a criminal prosecution of a potential claimant to that property, N.J.S.A. 2C:64-3(d) requires that the claimant file an answer before moving to stay the forfeiture action. Id. at ___ (slip. op. at 12-15). We held that, like the defendant police officers in Garrity -- who were forced to choose between forfeiting their jobs and incriminating themselves in an investigation of police misconduct --

> claimants in a civil forfeiture action who are defendants in a parallel criminal case also face an untenable choice: to forfeit their property or incriminate themselves. To defend against a forfeiture case, claimants who are also criminal defendants must file an

33

answer that states their interest in the property. In other words, to assert their constitutional right not to be deprived of property without due process, they have to link themselves to alleged contraband and give up their constitutional right against self-incrimination. Alternatively, they can refuse to answer and lose their property.

[Id. at ___ (slip op. at 17-18).]

This Court held in Melendez that "a defendant's choice to file an answer under those circumstances is not freely made. It is fraught with coercion." Id. at ___ (slip op. at 18). To avoid a conflict between a defendant's privilege against self-incrimination and his or her right to assert an interest in property that is the subject of a civil forfeiture complaint, the Court concluded that a claimant's answer filed in a civil forfeiture action pursuant to N.J.S.A. 2C:64-3(d) should not be admitted in his or her criminal trial. Id. at ___ (slip op. at 18-20).

B.

We note a significant distinction between the civil forfeiture answer filed by the defendant in Melendez and the notice of motion for a writ of replevin and certification at issue here. When defendant served his notice of motion and certification, he was not required by N.J.S.A. 2C:64-3(d) or any other civil forfeiture statute to file a pleading in order to protect his rights to the disputed property. His attorney had already filed an answer setting forth a

34

general denial and had secured a stay of the civil forfeiture action, thus obviating the need for defendant to file any pleading in that action while his criminal case was pending. Nonetheless, defendant sought to reopen the forfeiture action and demanded that the State return the disputed property. This appeal thus raises none of the Fifth Amendment concerns that we addressed in <u>Melendez</u>. <u>See</u> <u>Melendez</u>, ___ N.J. at ___ (slip op. at 17-20).

Moreover, defendant affirmatively used the notice of motion for a writ of replevin and certification in his own defense at trial. In his opening and summation, defense counsel relied on those statements, and he stated in summation that they constituted unrebutted evidence that defendant lawfully obtained the currency found on his person and in his home.

Accordingly, we conclude that the trial court's admission of defendant's notice of motion for a writ of replevin and certification did not constitute error.

## VI.

The judgment of the Appellate Division is reversed, and defendant's conviction is reinstated.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON's opinion.

35